IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| **ANTHONY RICKETTS,** <br> 3607 24TH Avenue <br> Temple Hills, Maryland 20748 <br><br> **Plaintiff,** <br><br> v. <br><br> **KSJ & ASSOCIATES, INC.** <br>     <u>Service to Resident Agent</u>: <br> Ian A Cronogue, Esq. <br> 1320 Old Chain Bridge Road, Suite 200 <br> McLean, Virginia 22101 <br><br> **Defendant.** | * <br> * <br> * <br> * <br> * CIVIL ACTION NO. _____ <br> * <br> * <br> * <br> * **JURY TRIAL DEMAND** <br> * <br> * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**COMPLAINT AND JURY DEMAND**

Plaintiff Anthony Ricketts ("Plaintiff"), by counsel, states as his Complaint against Defendant KSJ & Associates, Inc. ("KSJ"), the following:

**I.     JURISDICTION AND VENUE**

1.     This Court has jurisdiction over this matter as it arises from the federal question presented by the Americans with Disabilities Act Amendment Act ("ADAAA"), 42 U.S.C. §§12101, 12131, *et seq*., Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §2000e *et seq.*, and 42 U.S.C. §1981 *et seq.* ("Section 1981"), the Family Medical Leave Act, 29 U.S.C. §2601, *et seq*. and pursuant to 28 U.S.C. §1331 and 1343(a)(4).

1

2. Venue is proper in this court as the acts and/or omissions of Defendant from which these causes of action arise, occurred within the Eastern District of Virginia. See, 28 U.S.C. §1391(b)(2).

3. At all relevant times, Plaintiff resided in Temple Hills, Maryland.

4. Defendant KSJ & Associates, Inc. is incorporated in and does business within the Commonwealth of Virginia. Therefore, this Court has jurisdiction over KSJ.

## II. PROCEDURAL REQUIREMENTS

5. Prior to bringing this action, Plaintiff filed an administrative charge with the United States Equal Employment Opportunity Commission ("EEOC"). Plaintiff received a Dismissal and Notice of Right to Sue from the EEOC dated September 29, 2020, attached hereto as Exhibit A. This action was timely filed within 90 days of receipt of the EEOC's Notice of Rights.

## III. THE PARTIES

6. Plaintiff is a Black male, who has engaged in protected activity. At all times material, Plaintiff was a qualified individual with disabilities, namely, depression and anxiety that interfered with his ability to sleep, concentrate and breath due to hyperventilation. At the time of his separation, Plaintiff was a Management Analyst, earned an annual salary of approximately $80,000 per year and worked approximately forty hours per week. During his employment, Plaintiff was afforded benefits including health, vision, dental, disability and life insurance, along with 15 paid vacation days and 10 paid holidays annually.

7. KSJ is a privately held professional consulting firm that specializes in providing information technology management, technical support, and consulting services to the

Department of Defense and various federal and state agencies. KSJ has offices in Falls Church, Virginia, where Plaintiff worked.

## IV.   FACTUAL ALLEGATIONS

8. Plaintiff was hired by Defendant as a Management Analyst on or about May 7, 2019 and remained in the position until his termination on or about February 10, 2020. Immediately prior to working for Defendant, Plaintiff served on active duty in the U.S. Army for four years and was honorably discharged in 2019.

9. Upon starting with KSJ, Plaintiff worked on a full-time basis and performed his duties, faithfully, diligently and with competence during his entire tenure with KSJ.

10. Although Plaintiff did not receive a written performance review from KSJ, his supervisor Mary Debevoise ("Ms. Debevoise") informed him that he had excellent work performance and met or exceeded her expectations and she never disciplined Plaintiff.

11. Despite his good job performance, Plaintiff was subjected to a discriminatory and retaliatory work environment caused by his boss, Racheal Jarosz ("Ms. Jarosz"), Cyber Security Analyst/Information Systems Security Officer, based upon his race, color and protected activity.

12. Ms. Jarosz demonstrated racial animus toward Plaintiff and began targeting him as soon as she began working with him in October 2019.

13. As an example, Ms. Jarosz would refer to Plaintiff and the other people of color as "you people" and she would question the intelligence of brown people by asking them if they could read in condescending tones. By contrast, Ms. Jarosz did not refer to Katherine Krona ("Ms. Krona"), a Caucasian female, who worked under the same supervisor, in the same position and had the same or similar duties as Plaintiff as "you people," nor did she refer to Lisa Jarrett ("Ms. Jarrett), another Caucasian female that way. She also did not question or make

comments about the intelligence of Ms. Jarett or Ms. Krona or speak to them in a condescending tone.

14. In Plaintiff's case, Ms. Jarosz was particularly offensive because he was tasked by his supervisor with serving as Ms. Jarosz's back-up in or around October 2019. In the back-up role, Plaintiff had to rely on Ms. Jarosz to inform him of meetings, projects, important deadlines and other requirements to ensure that customer needs were met when Ms. Jarosz was absent or needed help.

15. However, Ms. Jarosz made it impossible for Plaintiff to be successful in the back-up role. Specifically, she excluded him from meetings, important emails and conference calls and would not inform him of customer deadlines. When he tried to discuss these matters with Ms. Jarosz, she would dismiss him and walk away.

16. Instead of supporting Plaintiff's success in the back-up role, Ms. Jarosz reassigned his duties to Ms. Krona, a Caucasian female and sent important emails, conference call notices, meeting invitations and customer deadline information to Ms. Krona. As a result of Ms. Jarosz's decisions, Plaintiff was unaware of important action items that needed to be completed for customers and did not know what was happening unless Ms. Krona told him.

17. In or around November 2019, Plaintiff told Ms. Debevoise what Ms. Jarosz was doing, stated that he believed she was discriminating against him and asked her to intervene. In response, she promised to address Plaintiff's concerns, but nothing changed or appeared to have been done.

18. Instead, Ms. Jarosz continued to ostracize Plaintiff, exclude him from meetings and conference calls and deny his request to be kept informed of client information that he needed to do his job. As before, Plaintiff continued to ask Ms. Debevoise to step in and address

Ms. Jarosz's interference with his ability to perform his duties into December 2019 but nothing was done to address his concerns.

19. On January 9, 2020, Ms. Jarosz's inappropriate behavior towards Plaintiff escalated to the point that she became intimidating and threatening and something needed to be done. On that day, Ms. Jarosz entered Plaintiff's office supposedly to discuss work issues and ask Plaintiff about the discriminatory remarks that he claimed that she had made.

20. Before Plaintiff could finished speaking, Ms. Jarosz began to threaten and berate him so loudly and with such hostility that she was overheard by Plaintiff's colleague Ms. Jarrett. According to Ms. Jarrett, Ms. Jarosz was yelling at Plaintiff and she seemed to be out of control with the way she was treating Plaintiff.

21. Believing that something needed to be done, Ms. Jarrett went to Ms. Debevoise, informed her that Ms. Jarosz was verbally abusing Plaintiff and asked her to intervene.

22. As with Plaintiff, Ms. Debevoise also told Ms. Jarrett that she would take care of it. However, she did not ask Plaintiff what happened in his office or inform him that she intended to address Ms. Jarosz's conduct.

23. Instead, Plaintiff was so rattled by Ms. Jarosz's misconduct that he sent an email to Ms. Debevoise on January 14, 2020 entitled "Work Environment." Among other things, his email reminded Ms. Debevoise about his previous complaints about Ms. Jarosz, told her that things had not changed, and that Ms. Jarosz continued to exclude him from receiving important information he needed to do his job.

24. Notably, Plaintiff's email also stated, "I am sincerely of the opinion that Rachel's behavior towards me is unfounded and as a person of color this makes me extremely uncomfortable in the workplace."

25. Plaintiff's email further asked that Ms. Debevoise transfer him to another position "where you think my talents could best be used."

26. After receiving the e-mail, Ms. Debevoise asked to meet with Plaintiff that same day. During their meeting, she conceded that Plaintiff had previously complained about Ms. Jarosz and told him that she was required to take his concerns to KSJ's human resources department.

27. Ms. Debevoise then informed Plaintiff that his job performance with KSJ was "above average" and stated that she had recommended him for a salary increase in November 2019. According to Ms. Debevoise, however, her salary increase recommendation was rejected because Ms. Jarosz who informed KSJ's President that Plaintiff did not deserve a raise.

28. At no time did Ms. Debevoise tell Plaintiff that his job performance or attendance were unsatisfactory during the January 14, 2020 meeting, nor did she state that he would be counselled or disciplined for any performance concerns. Instead, the meeting ended with Plaintiff believing that things would be better, but that was not what happened over the next few days.

29. Instead, after HR received Plaintiff's January 14, 2020 discrimination complaint, Christina McGee ("Ms. McGee") and Jacqueline Livingston ("Ms. Livingston") summoned him to several meetings beginning on or about January 16, 2020 and asked if he believed that he was treated differently by Ms. Jarosz and whether he wanted an investigation. Plaintiff replied, yes, he did believe that he had been discriminated against and he asked them to investigate his complaints.

30. Rather than investigate, however, Ms. McGee and Ms. Livingston called Plaintiff to a meeting the next day under the guise that they wanted to discuss his discrimination

complaints. During this second meeting with Plaintiff, Ms. McGee and Ms. Livingston's attitude toward Plaintiff was hostile and threatening and they falsely accused him of misconduct at work.

31.     In particular, they accused Plaintiff of being "sexist" because he asked Ms. Jarett to inform Ms. Debevoise that he was running late for a meeting one day. They also claimed he had committed timecard fraud and government fraud even though he had completed his timecard in accordance with Ms. Debevoise's instructions.

32.     Despite these serious allegations, Ms. McGee and Ms. Livingston then told Plaintiff that they would let him off with a warning for these alleged workplace concerns.

33.     Plaintiff believed that their alleged concerns were retaliatory and fabricated due to his discrimination complaint. As a result, he sent an email to Ms. McGee and Ms. Livingston immediately after their meeting and asked them to put their verbal critiques about him in writing on KSJ's official performance evaluation form.

34.     Because the recent workplace events had exacerbated his anxiety and depression, Plaintiff then went on paid time off (PTO) from January 20-24, 2020 and did not return to work until January 27, 2020.

35.     On his first day back, Plaintiff was called to a third meeting with KSJ's President, Ms. McGee and Ms. Livingston allegedly to discuss his performance again. At the start of the meeting, Plaintiff was again asked if he wanted to pursue his discrimination complaint against Ms. Jarosz and he stated, "Yes." Plaintiff was then given a second verbal performance evaluation for alleged performance problems that had never been discussed with him prior to his discrimination complaint.

36.     In the same meeting, Plaintiff was placed on a performance improvement plan (PIP) that changed his tour of duty from 9:00 am to 5:30 p.m. to 7:30 a.m. to 3:30 p.m. and

required him to be in the office five days a week. No other employee at KSJ was asked to come to work that early in the morning or denied access to telework.

37. Prior to this retaliatory deprival of telework and before he filed his written discrimination complaint against Ms. Jarosz, Plaintiff had been regularly approved for telework to attend classes for his masters' degree program. Indeed, Plaintiff had been advised that he could telework if needed to meet his educational requirements during his interview to work for KSJ.

38. After the meeting, Plaintiff emailed Ms. McGee and Ms. Livingston to let them know that the PIP he was given was retaliatory, contained fabricated accusations against him that were not consistent with Ms. Debevoise's statements about his performance or items previously discussed with him. The email also stated: "I have no doubt the company is aware of Rachel Jarosz's racial and hostile treatment against people of color" and that he was "being punished by the entire management team and HR for filing a complaint against Rachel Jarosz."

39. The next day, Plaintiff advised Ms. Debevoise that his "depression/anxiety" had gotten worse and he was "currently on medications for anxiety and depression due to "the stress and hostility at work, specifically, receiving a PIP from Ms. McGee and Ms. Livingston, who were not his direct managers while other employees received performance feedback from their direct managers. In the email he sent to Ms. Debevoise, Plaintiff remarked that he would not have been "suffering and being treated so unfairly" if Ms. Debevoise had addressed his 2019 complaints against Ms. Jarosz. He also stated that he had taken on multiple initiatives to improve the organization as a whole and had a stellar record of being the first one to arrive at work and the last to leave until the work hostility created by Ms. Jarosz began.

40. After receiving the email, Ms. Debevoise met with Plaintiff to discuss why he was being treated unjustly. She told him that management was "upset" about his complaint and he should not be surprised by their hostility. She also recommended that Plaintiff resign from KSJ because "his career was over."

41. On January 28, 2020, Plaintiff asked to telework as a reasonable accommodation for his disability and requested the necessary paperwork for his physician. In the past prior to him complaining of discrimination, his telework requests had been routinely approved, but this time Ms. Livingston denied his request.

42. When he arrived at work the next day, Ms. Livingston and Ms. McGee summoned him to a meeting, supposedly to investigate his discrimination complaint, but they proceeded to question him with so much hostility that Plaintiff asked for an investigation by an independent third party.

43. After that, Plaintiff again asked Ms. Debevoise if he could telework on January 30, 2020, explaining that he no longer felt safe at work. In response to his email, Ms. Livingston and Ms. McGee permanently revoked his telework privileges on Friday, January 31, 2020 to attend classes for his master's degree program.

44. After his telework was revoked, Plaintiff asked to take sick leave on January 31, 2020 to meet with his physician and complete his reasonable accommodation form. Unbelievably, Ms. McGee and Ms. Livingston denied his request for sick leave.

45. Plaintiff then informed them that he could not report to the office on January 31, 2020 and planned to use his preapproved telework to attend classes for his masters' program that day.

46. Thereafter, Ms. McGee and Ms. Livingston placed Plaintiff on indefinite suspension for taking a preapproved telework day.

47. Without further communication, KSJ discharged Plaintiff on February 10, 2020.

48. Plaintiff was discharged less than one month after he filed an internal discrimination complaint against Ms. Jarosz.

49. Upon information and belief, Plaintiff was terminated from his employment with KSJ due to race or color discrimination and/or retaliation for his legitimate complaints of race or color discrimination, retaliation and hostile work environment.

50. Upon information and belief, this abrupt termination was merely a pretext to unlawful race or color discrimination and retaliation by KSJ, in violation of Title VII, the Civil Rights Act and the ADA as KSJ's engagement in a pattern and practice of race or color discrimination had fostered a work environment charged with discrimination and retaliation and was hostile to Plaintiff.

## COUNT I
## RACE AND COLOR DISCRIMINATION
## IN VIOLATION OF TITLE VII AND SECTION 1981

51. Plaintiff adopts and incorporates by reference all of the allegations set forth in the previous paragraphs.

52. Plaintiff is a Black male and is protected from race and color discrimination by Title VII and the Civil Rights Act with respect to the making and enforcement of contracts.

53. At all material times, KSJ had an obligation to maintain a work environment that was not charged with race and color discrimination and hostile to Plaintiff and other minorities.

54. KSJ violated federal law by creating and permitting a work environment to exist that was discriminatory and hostile to Plaintiff and by wrongfully terminating Plaintiff.

55. Specifically, KSJ had an obligation to ensure that Plaintiff and members of his protected classes enjoyed the same benefits, privileges, terms and conditions of employment as employees outside their protected classes.

56. However, KSJ allowed Rachel Jarosz to be openly biased against Black employees including by referring to people of color as "you people," questioning the intelligence of people of color and speaking to them in condescending tones. Ms. Jarosz showed animus toward Plaintiff by excluding him from meetings and conference calls, refusing to provide information for Plaintiff to perform his duties, and giving his job duties to Ms. Krona and treating him less favorable than Ms. Krona, his Caucasian female colleague with respect to terms and conditions of employment. She also yelled at Plaintiff with such violence and intimidation that Ms. Jarrett felt the need to report the incident to Plaintiff's supervisor.

57. As a direct and proximate result of KSJ's race and color discrimination, Plaintiff suffered and will continue to suffer pecuniary loss, non-pecuniary less, severe emotional distress, anxiety and depression, inconvenience, mental anguish and loss of enjoyment of life.

58. Prior to Plaintiff's separation from employment with KSJ, he was performing his duties at a satisfactorily level and meeting of exceeding KSJ's legitimate business expectations according to his supervisor Ms. Debevoise.

59. Any reasons cited by KSJ for Plaintiff's termination were pretextual as Plaintiff work performance was meeting legitimate business expectations.

60. KSJ's acts as described above constitute race and color discrimination in violation of Title VII and Section 1981.

61. Plaintiff is entitled to all reasonable costs, including attorney's fees associated with this matter, plus interest.

## COUNT II
## RETALIATION IN VIOLATION OF TITLE VII AND
## SECTION 1981

62. Plaintiff adopts and incorporates by reference all of the allegations set forth in the previous paragraphs.

63. Plaintiff is a Black male and is protected from race and color discrimination and retaliation by Title VII.

64. During Plaintiff's employment with KSJ, he performed his work at a satisfactory level and met or exceeded KSJ's legitimate expectations.

65. At all material times, KSJ had an obligation to maintain a work environment that was not charged with racial and color discrimination and retaliation toward Plaintiff and was not hostile to Plaintiff and other minorities.

66. KSJ violated federal law by creating and permitting a work environment to exists that was discriminatory and retaliatory to Plaintiff based on race, color and his protected activity.

67. Specifically, KSJ allowed Rachel Jarosz to be openly biased against Black employees including Plaintiff by referring to people of color as "you people," questioning their intelligence by asking if they could read and speaking to minorities in condescending tones. Ms. Jarosz also treated Plaintiff less favorably than Ms. Krona his Caucasian female colleague in that she was invited to meetings and conference calls and informed of client deadlines that were needed for her job, while Plaintiff was denied the same terms and conditions of employment and his duties were transferred to Ms. Krona.

68. Plaintiff engaged in the protected conduct of complaints about workplace discrimination, which were initially ignored for several months by Ms. Debevoise and later caused him to be singled out and retaliated against for making these complaints.

69. Plaintiff was disciplined and subsequently terminated less than one months after he complained about the discrimination in retaliation for his complaints about workplace discrimination.

70. As a direct and proximate result of KSJ's race and color discrimination, Plaintiff suffered and will continue to suffer pecuniary loss, non-pecuniary less, severe emotional distress, anxiety and depression, inconvenience, mental anguish and loss of enjoyment of life.

71. KSJ would not have targeted Plaintiff or taken other retaliatory actions against him, but for Plaintiff's race and color and/or his complaints about his racially charged working environment.

72. After Plaintiff opposed discrimination, Ms. Livingston and Ms. McGee and other decisionmakers retaliated against him by falsely accusing him of misconduct and threatening him with disciplinary action for stating that he wanted to pursue an internal discrimination complaint against Ms. Jarosz. They also gave him verbal and written warnings and placed him on a PIP three days after he complained about discrimination.

73. Plaintiff's supervisor Ms. Debevoise was not present for any of the above events, including when Ms. Livingston and McGee denied Plaintiff's requests for telework that had always been approved prior to his discrimination complaint and then they terminated his employment.

74. Ms. Jarosz, Ms. Livingston, Ms. McGee, and KSJ's president were acting in the scope of their employment with KSJ at the time of their actions, therefore, KSJ is liable for their actions, which were committed during working hours and at their place of employment and/or were in conjunction with their work related duties.

75. Any reasons cited by KSJ for its actions were pretextual as Plaintiff's work performance was meeting legitimate business expectations.

76. As a direct and proximate result of KSJ's actions, Plaintiff suffered and will continue to suffer pecuniary loss, non-pecuniary less, severe emotional distress, anxiety and depression, inconvenience, mental anguish and loss of enjoyment of life.

77. At all times material hereto, KSJ engaged in unlawful or retaliatory practices with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of punitive damages.

78. KSJ's acts as described above constitute race and color discrimination and retaliation in violation of Title VII and Section 1981.

79. Plaintiff is entitled to all reasonable costs, including attorney's fees associated with this matter, plus interest.

## COUNT III
## HOSTILE WORK ENVIROMENT
## UNDER TITLE VII AND SECTION 1981

80. Plaintiff adopts and incorporates by reference all of the allegations set forth in the previous paragraphs.

81. Plaintiff is a Black male and is protected from race and color discrimination, retaliation and a hostile work environment by Title VII and the Civil Rights Act.

82. At all material times, KSJ had an obligation to maintain a work environment that was not charged with race and color discrimination and not retaliatory or hostile to Plaintiff and other minorities.

83. KSJ violated federal law by creating and permitting a work environment to exists that was discriminatory, retaliatory, hostile and offensive to Plaintiff.

84. Specifically, KSJ allowed Rachel Jarosz to be openly biased against Black employees, including Plaintiff by referring to people of color as "you people," questioning heir intelligence, asking if they could read and yelling at and threatening Plaintiff in his office with such hostility that Plaintiff's coworker reported the incident to Ms. Debevoise. Ms. Jarosz also treated Plaintiff less favorably because of his race and color than Ms. Krona, his Caucasian female colleague in that she was invited to meetings and conference calls and informed of client deadlines that were needed for her job, while Plaintiff was denied the same terms and conditions of employment. Further, Ms. Jarosz transferred Plaintiff's duties to Ms. Krona and interfered with Plaintiff's opportunity for a salary increase after it was recommended by his supervisor.

85. After Plaintiff opposed discrimination, Ms. Livingston and Ms. McGee then retaliated against him by falsely accusing him of misconduct, threatening him with disciplinary action for stating that he wanted to pursue and internal discrimination complaint against Ms. Jarosz and then giving Plaintiff unwarranted discipline and a PIP within days of his written discrimination complaint. They also denied his request to take telework that had always been approved and terminated his employment for pretextual reasons.

86. The conduct previously described above was unwelcome and unlawful and based on Plaintiff's race, color and protected activities as evinced by the disparate treatment Plaintiff received during his employment with KSJ.

87. The conduct was sufficiently severe and pervasive as to alter the conditions of Plaintiff's employment and to create an abusive, hostile, threatening and intimidating atmosphere toward Plaintiff that caused Plaintiff and his colleague Ms. Jarrett to complain to Ms. Debevoise. Indeed, Plaintiff was disciplined and subsequently terminated from employment due to race and sex discrimination and retaliation and his complaints about the hostile environment.

88. Ms. Jarosz, Ms. Livingston, Ms. McGee, and KSJ's president were acting in the scope of their employment with KSJ at the time of their actions, therefore, KSJ is liable for their actions, which were committed during working hours and at their place of employment and/or were in conjunction with their work related duties.

89. As a direct and proximate result of KSJ's unlawful discrimination, retaliation and hostile environment Plaintiff suffered and will continue to suffer pecuniary loss, non-pecuniary less, severe emotional distress, anxiety and depression, inconvenience, mental anguish and loss of enjoyment of life.

90. At all times material hereto, KSJ engaged in practices supporting a hostile work environment with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of punitive damages.

91. The above described acts by KSJ constitute the creation of a hostile work environment in violation of Title VII and Section 1981.

92. Plaintiff is entitled to all reasonable costs, including attorney's fees associated with this matter, plus interest.

## COUNT IV
## DISABILITY DISCRIMINATION UNDER THE ADAAA

93. Plaintiff adopts and incorporates by reference all of the allegations set forth in the previous paragraphs.

94. At all times material, Plaintiff was a qualified individual with disabilities, specifically, depression and anxiety.

95. In or around January 2020, Plaintiff informed KSJ of his disabilities and requested a reasonable accommodation, namely, telework.

96. KSJ denied Plaintiff's request to telework and use sick leave on the same terms as his non-disabled colleagues and/or his colleagues who had not engaged in protected activity. In subjecting Plaintiff to the unequal treatment described herein because of his disability and for having engaged in protected activity, KSJ violated the ADAAA.

97. Ms. Jarosz, Ms. Livingston, Ms. McGee, and KSJ's president were acting in the scope of their employment with KSJ at the time of their actions therefore, KSJ is liable for their actions, which were committed during working hours and at their place of employment and/or were in conjunction with their work related duties.

98. As a direct and proximate result of KSJ's disability discrimination, Plaintiff suffered and will continue to suffer pecuniary loss, non-pecuniary less, severe emotional distress, anxiety and depression, inconvenience, mental anguish and loss of enjoyment of life.

99. At all times material hereto, KSJ engaged in practices supporting disability discrimination against Plaintiff with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of punitive damages.

100. The above described acts by KSJ constitute the creation of a hostile work environment in violation of the Americans with Disabilities Act, Amendment Act.

101. Plaintiff is entitled to all reasonable costs, including attorney's fees associated with this matter, plus interest.

## COUNT V
## FAILURE TO ACCOMMODATE UNDER THE ADAAA

102. Plaintiff adopts and incorporates by reference all of the allegations set forth in the previous paragraphs.

103. At all relevant times, Plaintiff was a qualified individual with a disability. In or around January 2020, Plaintiff requested telework and sick leave as reasonable accommodations

for his disabilities, including for the purpose of visiting his doctor to complete KSJ's reasonable accommodation form.

104. Plaintiff's colleagues who did not have disabilities were regularly allowed to use telework to work from home when requested. KSJ denied Plaintiff these same benefit of employment as his colleagues in retaliation for his protected activity. KSJ also failed to engage in the interactive process with Plaintiff or his physician prior to denying Plaintiff's reasonable accommodations requests.

105. As a direct and proximate result of KSJ's failure to accommodate Plaintiff's disability, Plaintiff suffered and will continue to suffer pecuniary loss, non-pecuniary less, severe emotional distress, anxiety and depression, inconvenience, mental anguish and loss of enjoyment of life.

106. At all times material hereto, KSJ engaged in practices supporting disability discrimination by Ms. McGee and Ms. Livingston and all other individuals involved in the decision to deny Plaintiff's request for a reasonable accommodation for his disability and they did so with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of punitive damages.

107. The above described acts by KSJ also constitute the creation of a hostile work environment for Plaintiff due to his disabilities in violation of the Americans with Disabilities Act, Amendment Act.

108. Plaintiff is entitled to all reasonable costs, including attorney's fees associated with this matter, plus interest.

## COUNT VI
## VIOLATION OF THE FMLA

109. Plaintiff adopts and incorporates by reference all of the allegations set forth in the

previous paragraphs.

110. At all times relevant, KSJ was a covered employer within the meaning of the FMLA.

111. At all relevant times, Plaintiff was a qualified individual with a disability. On or about January 20, 2020, Plaintiff requested FMLA protected leave due to his disability related medical condition and for the purpose of attending a medical appointment with his doctor.

112. However, KSJ interfered with, restrained, and/or denied Plaintiff's exercise of and/or attempts to exercise his rights under the FMLA.

113. Specifically, KSJ denied Plaintiff's request to take leave for a covered medical condition despite Plaintiff's request for such leave. KSJ then discharged Plaintiff for taking leave pursuant to a FMLA qualifying medical event.

114. As a direct and proximate result of KSJ's denial of and interference with Plaintiff's request for FMLA protected leave, Plaintiff suffered and will continue to suffer pecuniary loss, non-pecuniary less, severe emotional distress, anxiety and depression, inconvenience, mental anguish and loss of enjoyment of life.

115. At all times material hereto, KSJ engaged in practices that violated the FMLA with respect to Plaintiff and did so willfully and with indifference to the federally protected rights of Plaintiff so as to support an award of treble damages.

116. The above described acts by KSJ were done in violation of the Family Medical Leave Act.

117. Plaintiff is entitled to all reasonable costs, including attorney's fees associated with this matter, plus interest.

WHEREFORE, Plaintiff Anthony Ricketts prays for judgment against Defendant KSJ & Associates, Inc., for backpay, front pay, compensatory, liquidated and/or punitive damages, plus past and future pecuniary damages on each of the above-stated Counts, together with pre and post judgment interest, emotional damages, costs and attorneys' fees, and for such other and further relief as may be just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff requests that all matters in this case be tried by a jury.

Dated: December 16, 2020                               Respectfully submitted,

**ANTHONY RICKETTS**

By Counsel:

\_\_\_\_/s/_____
Monique Miles
VSB # 78828
Old Towne Associates, P.C.
216 South Patrick Street
Alexandria, Virginia 22314-3528
Ph: 703-519-6810
Fax: 703-549-0449
mmiles@oldtowneassociates.com

*Counsel for Plaintiff*